IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN C. STADLER, SR.,<br><br>  Plaintiff,<br><br>  v.<br><br>ROBERT G. WEIDHAAS, JR. in his capacity as a director and shareholder of Diecut US, Inc. and ALLISON D. WEIDHAAS in her capacity as a director of Diecut US, Inc.,<br><br>  Defendants. | CIVIL ACTION NO.:<br><br>**COMPLAINT** |

Plaintiff, John C. Stadler, Sr., ("Plaintiff") brings this action against Defendants, Robert G. Weidhaas, Jr. ("Mr. Weidhaas") and Allison D. Weidhaas ("Dr. Weidhaas") and in support thereof, avers as follows:

**NATURE OF THE ACTION**

1.      This action is brought by Plaintiff, a shareholder of Diecut US, Inc. (the "Corporation") against Mr. Weidhaas and his wife, Dr. Weidhaas, directors of the corporation, who have acted in an illegal and oppressive manner against Plaintiff.

2.      Mr. Weidhaas and Dr. Weidhaas have purported to take corporate action to strip Plaintiff of all operational control of the Corporation and involvement with its affairs.

3.      In this action, Plaintiff seeks judicial dissolution of the Corporation.

**PARTIES**

4.      Plaintiff is an individual and a resident of the State of New Jersey

5.      Mr. Weidhaas is an individual and resident of the Commonwealth of Pennsylvania residing at 1215 Evergreen Road, Yardley, Pennsylvania 19067.

6.      Dr. Weidhaas is an individual and resident of the Commonwealth of Pennsylvania residing at 1215 Evergreen Road, Yardley, Pennsylvania 19067.

**JURISDICTION AND VENUE**

7.      Pursuant to 28 U.S.C. § 1332(c), Plaintiff is a citizen of the State of New Jersey.

8.      Pursuant to 28 U.S.C. § 1332(c), Mr. Weidhaas is a citizen of the Commonwealth of Pennsylvania.

9.      Pursuant to 28 U.S.C. § 1332(c), Dr. Weidhaas is a citizen of the Commonwealth of Pennsylvania.

10.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as complete diversity in citizenship exists between plaintiff on one hand and defendants on the other hand and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b)(1), because both Mr. Weidhaas and Dr. Weidhaas reside in this judicial district.

**FACTS**

12.     On August 15, 2011 the articles of incorporation of the Corporation were filed with the Wyoming secretary of state stating that the Corporation would have authority to issue "25,000 SHARES COMMON STOCK, FULLY PAID AND NON-ASSESSABLE" (the "Articles of Incorporation").

13.     Since 2011 and through the current time, 20% of the shares of the stock of the Corporation (5,000 shares) have been held by Plaintiff and the remaining 80% (20,000 shares) have been held by Mr. Weidhaas.

14.     The Articles of Incorporation identify Nevada Registrations, Inc. as the incorporator of the Corporation.

15.     At some time on or prior to September 7, 2011 at a meeting held by Nevada Registrations, Inc., Plaintiff and Mr. Weidhaas were elected directors of the Corporation.

16.     At some time on or prior to September 7, 2011, in their capacity as directors of the Corporation, Plaintiff and Mr. Weidhaas adopted the initial bylaws of the Corporation (the "Bylaws").

17.     At some time on or prior to September 7, 2011, in their capacity as directors of the Corporation, Plaintiff and Mr. Weidhaas appointed Mr. Weidhaas as president of the Corporation and Plaintiff as its secretary/treasurer.

18.     On September 7, 2011, Mr. Weidhaas executed the Bylaws in his capacity as president of the Corporation. See, **Exhibit A**.

19.     Among other things, the Bylaws authorize the Corporation's "calling and holding of an annual meeting of its Stockholders, and to amend the ByLaws from time to time, and to allow voting via proxy." *Id.*

20.     From 2011 through mid-2023 Plaintiff and Mr. Weidhaas operated the Corporation through entities controlled by them and provided goods and services to the printing industry.

21.     From 2011 through mid-2023 the Corporation acquired 100% ownership interests in My Press Needs, LLC, Weidhaas LLC and Phoenix Partners, LLC (the "Subsidiaries").

22.     Phoenix Partners, LLC holds the rights to the full engineering and design specifications and patents for the Crest line of die cutting machines and equipment as well as the trade agreements between Phoenix Partners, LLC and Jen Shang, the manufacturer and producer of the Crest line of products.

23.     From 2011 through mid-2023, Plaintiff provided services to the Corporation and the Subsidiaries through Capital Professional Associates, Inc., Capital Associates Group, Inc., Strategic Operational Initiatives, LLC and others.

24.     From 2011 through mid-2023, Mr. Weidhaas provided services to the Corporation and the Subsidiaries through Weidhaas Associates and others.

25.     On May 3, 2023, the Corporation held its annual meeting of shareholders pursuant to Wyo. Stat. Ann. § 17-16-701 (the "May 3, 2023 Shareholders' Meeting")

26.     At the May 3, 2023 Shareholders' Meeting, three motions were made and passed unanimously: 1) ratifying the acts of the board of directors during the previous year; 2) allowing the Corporation's directors and officers to file documents necessary to perpetuate the existence of the

Corporation and; 3) appointing of the officers of the Corporation as follows: Mr. Weidhaas as president, Plaintiff as vice president and John J. Stadler as secretary and treasurer.

27.     Immediately after the May 3, 2023 Shareholders' Meeting, the Corporation held a meeting of the board of directors during which no motions were made or passed other than to adjourn the meeting.

28.     On June 22, 2023, James D. Cashel, Esq., the Corporation's legal counsel, sent correspondence stating that the "Annual Meeting of Stockholders and Board" would take place the following day, June 23, 2023 at 9:00 am via Zoom (the "June 23, 2023 shareholders' meeting").

29.     Mr. Cashel offered no explanation why the Corporation was permitted to hold an annual meeting of shareholders mere weeks after the May 3, 2023 Shareholders' Meeting.

30.     As such, to the extent that the June 23, 2023 shareholders' meeting was an annual meeting, it violated Wyo. Stat. Ann. § 17-16-701.

31.     To the extent the June 23, 2023 shareholders' meeting was a special meeting pursuant to Wyo. Stat. Ann. § 17-16-702, the directors of the Corporation did not call it pursuant to Wyo. Stat. Ann. § 17-16-702(a)(i) and, accordingly, it violated Wyo. Stat. Ann. § 17-16-702.

32.     As to the June 23, 2023 shareholders' meeting, Mr. Cashel indicated that there would be two orders of business: 1) approving the May 3, 2023 Shareholders' Meeting minutes; 2) nominating and electing a board of directors, namely Mr. Weidhaas, Dr. Weidhaas and Plaintiff. Both motions were made and passed.

33.     Mr. Cashel also provided notice of a meeting of the Corporation's board of directors to take place on June 23, 2023 via email dated June 22, 2023.

34.     In his email, Mr. Cashel identified four agenda items including: 1) appointing orporate officers; 2) approving retention of the accounting firm Haefele Flanigan "to perform consulting services, approved by the President, to independently review the corporate records for [the Corporation] (including all LLC subsidiaries), financial records, and financial statements, and tax filings;" 3) authorizing the president to evaluate "strategic alternatives" for My Press Needs, LLC and; 4) "[a]pprove the bylaws (copy attached). I cannot locate any Bylaws. The attached Bylaws are ordinary for a Wyoming corporation."

35.     At all times relevant to this complaint, the Bylaws were readily available to all authorized persons on the Corporation's shared electronic filing system, including Mr. Weidhaas and Mr. Cashel.

36.     As to the fourth agenda item, approval of bylaws, the Bylaws provide that "[t]his Corporation reserves the right to amend, alter, change or repeal any provision contained in its Articles of Incorporation of By-Laws, by a vote of the Stockholders, in the manner as provided by the Statutes of the State of Wyoming." See, **Exhibit A**.

37.     As such, according to the explicit, unambiguous text of the Bylaws, the only mechanism for the Bylaws to be amended was by vote of the shareholders.

38.     At no time did the Corporation's shareholders vote to amend the Bylaws.

39.     At no time was notice provided pursuant to Wyo. Stat. Ann. §17-16-705 that the shareholders would vote on an amendment to the Bylaws.

40.     At no time did a shareholders' meeting take place during which a vote was taken to "amend, alter, change or repeal" any portion of the Bylaws, as provided by the Bylaws.

41.     Nonetheless, Mr. Weidhaas, acting in his capacity as president of the Corporation, purports to have issued a "certificate of corporate resolution" dated June 23, 2023 stating that "on the 23rd day of June, 2023, a duly and regularly called meeting was held and the following resolutions were duly adopted by the Board of Directors pursuant to the Bylaws of the Company… FIRST, that the attached Bylaws are approved and in effect and supersede all prior Bylaws of the Company." See, **Exhibit B**.

42.     Mr. Weidhaas's June 23, 2023 "certificate of corporate resolution" is a nullity as it relates to the Bylaws because it plainly violates the Bylaws.

43.     In turn, the purported June 23, 2023 amendment to the Bylaws (the "Purported Amendment") are a nullity.

44.     Upon information and belief, the decision to attempt to circumvent the Bylaws by introducing the Purported Amendment was informed by the legal opinion of Mr. Cashel upon the request of Mr. Weidhaas and Dr. Weidhaas.

45.     Mr. Weidhaas and Dr. Weidhaas were not entitled to rely on the opinion of Mr. Cashel with regard to amendment of the Bylaws because the Bylaws plainly vest the shareholders with the right to amend the Bylaws to the exclusion of any other mechanism.

46.     To the extent that Mr. Cashel provided legal advice to Mr. Weidhaas and Dr. Weidhaas stating that the Bylaws could be amended by director approval rather than shareholder approval, because that advice violates the Bylaws and places the interests of Mr. Weidhaas and Dr. Weidhaas above those of Plaintiff, that legal advice may constitute legal malpractice.

47.     On November 20, 2023, Mr. Cashel, purporting to represent the interests of the Corporation, sent correspondence to Plaintiff stating that the accounting review undertaken by Haefele Flanigan as authorized by board action revealed that Plaintiff had taken an unauthorized dividend of $68,242.96 and demanded return of $68,242.96 plus $18,646.75 in connection with all costs billed by Haefele Flanigan (even though Haefele Flanigan had been retained by the board of directors for an entirely unrelated purpose).

48.     The payment of $68,242.96 constituted an equalization of compensatory disbursement to Plaintiff where periodic equalization of compensatory disbursement had long been the custom of Plaintiff and Mr. Weidhaas. Moreover, Mr. Weidhaas was aware of the pending equalization prior to it being made and raised no objection. The calculation for the equalization was filed within the Corporation's shared electronic file and was available to Mr. Weidhaas, Dr. Weidhaas and Mr. Cashel at any time. The payment became an issue when Mr. Weidhaas and Dr. Weidhaas, with the assistance of Mr. Cashel, acted to use the payment as a pretext for excluding Plaintiff from operation of the Corporation.

49.     Days later, on November 28, 2023, Plaintiff received correspondence from Mr. Cashel advising him that pursuant to the Purported Amendment, in his capacity as a shareholder of the Corporation, Mr. Weidhaas had reduced the number of directors of the Corporation from three to two "by consent" (leaving Mr. Weidhaas and Dr. Weidhaas as sole directors) and, in their capacity as directors of the Corporation, Mr. Weidhaas and Dr. Weidhaas had removed Plaintiff as an officer of the Corporation, also "by consent."

50.     Upon information and belief, the decision to attempt to circumvent the Bylaws by reducing the number of directors of the Corporation to two and removing Plaintiff as a director and officer of the Corporation was informed by the legal opinion of Mr. Cashel upon the request of Mr. Weidhaas and Dr. Weidhaas.

51.     By correspondence dated December 7, 2023, Mr. Weidhaas was advised that all corporate actions which purport to be taken pursuant to any amendment of the Bylaws, including, but not limited to, the actions by "consent" dated November 27, 2023 and November 28, 2023 and the appointment of Mr. Cashel adverse to Plaintiff are nullities. See, **Exhibit C**.

52.     Mr. Weidhaas was given until December 15, 2023 to respond to the December 7, 2023 correspondence but no response was forthcoming.

53.     Instead, on December 8, 2023, Mr. Cashel ignored the substance of the December 7, 2023 correspondence and stated "I do not consent to you contacting my client directly any further with respect to the subject matter of my November 20 and 28 communications. You can direct any future contacts through me."

54.     In response, Mr. Cashel was sent correspondence inquiring as follows: "I understand that you purport to represent the Company, which [Plaintiff] denies for the reasons set forth in my letter. Do you also purport to represent Mr. Weidhaas? Kindly advise.

55.     Instead of responding to the direct question, Mr. Cashel stated:

I represent Diecut US, Inc.

There are no reasons in your letter that support Mr. Stadler's denial regarding my representation of Diecut US, Inc.

Moreover, the assertions in your letter have nothing to do with whether or not Diecut US, Inc. is my client, but a number of the assertions do pertain to the subject matter of my November 20 and 28 communications.

I do not consent to you contacting my client directly with respect to the subject matter of my November 20 and 28 communications.

You can direct any future contacts through me.

56.     Regardless of who Mr. Cashel may purport to represent, at the current time, Mr. Weidhaas and Dr. Weidhaas are operating the Corporation to the exclusion of Plaintiff.

57.     Purporting to act on behalf of the Corporation, Mr. Weidhaas and Dr. Weidhaas have hired Mr. Cashel to seek repayment of $86,889.71 including $18,646.75 towards payment of an accountant who was ostensibly hired not to investigate alleged malfeasance by Plaintiff, but more broadly to review the Corporation's financial records.

58.     Purporting to act under the Purported Amendment, Mr. Weidhaas and Dr. Weidhaas have reconfigured the Corporation such that they retain complete control of the Corporation, including an incredibly expansive provision which relieves them even of the obligation to notify shareholders of in advance of corporate action:

> Section 2.08 **Action by Written Consent of Stockholders.**  Any action of the stockholder required or permitted to be taken at any regular or special meeting thereof may be taken without any such meeting, notice of meeting or vote if a consent in writing setting forth the action thereby taken is signed by the holders of outstanding stock having not less than the number of votes that would have been necessary to authorize such action at a meeting at which all shares entitled to vote were present and voted. Prompt notice of the taking of any such action shall be given to any stockholders entitled to vote who have not so consented in writing.

59.     Thus, in contrast to the Bylaws, which provided that shareholder action could be taken only after advance notice of meetings, the Purported Amendment permits shareholder action without prior notice and only notification to Plaintiff after the action takes place.

60.     As they pertain to actions of directors, while the Bylaws permit only limited action absent "corporate resolution properly resolved by an affirmative vote of the majority of the Directors, appropriate noticed of the meeting of the Corporation, or by waiver of notice…" the Purported Amendment dispenses of any pretense of a meeting, allowing Mr. Weidhaas and Dr. Weidhaas, husband and wife, to consent to board action without any meeting whatsoever.

61.     Both Mr. Weidhaas and Dr. Weidhaas are not "qualified directors" pursuant to Wyo. Stat. Ann. §17-16-143 with regard to this litigation because they are both parties to this proceeding, they each

have a material interest in the outcome of this proceeding and the each have a material relationship with persons who have a material interest in the outcome of this proceeding.

## COUNT I
### (Dissolution pursuant to Wyo. Stat. Ann. §17-16-1430)

62.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of the complaint as if forth herein at length.

63.     As set forth above, Mr. Weidhaas and Dr. Weidhaas, with the assistance of Mr. Cashel, have illegally excluded Plaintiff from participation in the management and operation of the Corporation through their violation of the explicit and unambiguous terms of the Bylaws.

64.     At the time Plaintiff caused the Corporation to come into existence, he reasonably expected that the mode of operation of the Corporation would include his participation in its operation on a day-to-day basis and that expectation was fulfilled for nearly 12 years.

65.     Mr. Weidhaas and Dr. Weidhaas's unilateral actions excluding Plaintiff from day-to-day operation of the Corporation has negatively impacted Plaintiff's reasonable expectations regarding the Corporation and therefore constitutes oppressive conduct.

66.     Moreover, in agreeing to pay Mr. Cashel for legal services related to accusing Plaintiff of wrongful conduct, Mr. Weidhaas and Dr. Weidhaas are wasting and misapplying corporate assets.

**WHEREFORE**, plaintiff, John C. Stadler, Sr., requests that this honorable court enter judgment in his favor and against defendants, Robert G. Weidhaas, Jr. and Allison D. Weidhaas, order dissolution of Diecast US, Inc. pursuant to Wyo. Stat. Ann. §17-16-1430, direct the winding up and liquidation of Diecast US, Inc.'s business and affairs in accordance with Wyo. Stat. Ann. §17-16-1405 and order consequential and incidental damages, interest, attorneys' fees, costs of suit and other relief that this court deems just and proper.

## CERTIFICATION PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 53.2(3)(C)

Pursuant to Local Civil Rule 53.2(3)(C)), I hereby certify that:

1.      I am counsel of record for plaintiff John C. Stadler, Sr. in connection with the foregoing

verified complaint.

2.      The damages recoverable pursuant to the foregoing complaint exceed the sum of

$150,000.00 exclusive of interest and costs and any claims for punitive damages.

3.      Under penalty of perjury, the foregoing is true and correct.


                        Respectfully submitted,


                        _____
                        Noah A. Schwartz, Esq.
                        **FERRARA LAW GROUP, P.C.**
                        1 Holtec Drive, Suite G102
                        Marlton, New Jersey 08054
                        Telephone: (609) 571-3738
                        Fax:        (609) 498-7440
                        Noah@ferraralawgp.com
Dated:  December 28, 2023       *Attorneys for plaintiff, John C. Stadler, Sr.*

**EXHIBIT A**

# WYOMING FOR PROFIT CORPORATION

## CHARTERED UNDER TITLE 17 CHAPTER 16 ARTICLES 101 THRU 1804

## CORPORATION BYLAWS
### FOR
# DIECUT US, INC.

## NAMES, REGISTERED AGENT & OFFICERS

FIRST: The name of the corporation is: .**DIECUT US, INC.**

SECOND:  The above corporation is registered with the Secretary of the State, Of WYOMING, USA, and its Wyoming Registered Agent, and WYOMING offices are:

**WYOMINGREGISTEREDAGENT.COM,INC.**
**2510 WARREN AVE**
**CHEYENNE WY 82001-3163**

**THE COMPANY SHALL BE MANAGED BY ITS OFFICERS AS APPOINTED BY THE BOARD OF DIRECTORS, AS FOLLOWS:**

**PRESIDENT, SECRETARY, TREASURER & DIRECTOR(S)**
**5795 S. SANDHILL ROAD, SUITE F**
**LAS VEGAS NV 89120-2558**

THIRD: That the Corporation may maintain offices within, or out of the State of WYOMING, as from time to time the Board of Directors or the By-Laws of said Corporation may direct.

FOURTH:  The Corporation shall hold its annual Directors and Stockholders meeting in such place, within or out of the state, and at such times as the Directors so elect; adequate notice to be given to all Stockholders & Directors.

FIFTH:  The object and purpose of the Corporation, is to engage in all lawful activity as allowed by the laws of the state of WYOMING, or any other state, as follows:

1

A. Shall have rights and privileges and powers as may be conferred upon it by WYOMING Title 17-16-101 thru1804

B. May at any time exercise such rights, privileges and powers not Inconsistent with the purposes and objects for which the Corporation is organized.

C. Shall have the power to have succession by its Corporate name until such time as dissolution.

D. Shall have the power to sue and to be sued by any court of law.

E. Shall have the power to hold, purchase and convey real and personal property, to mortgage, or lease any such real or personal property.  The power to hold real and personal property shall include the power to take the same by devise or bequest in the State of WYOMING or any state.

F.  Shall have the power to appoint Officers and Agents as the affairs of  the Corporation may dictate and to allow them suitable compensation as prescribed by the Directors.

G. Shall have the power to make By-Laws not inconsistent with the Corporate laws of the state of WYOMING  and of the laws and constitution of the United States for the transaction of its business. Purchase, sale and transfer of  stock, bond, securities, nvestments and options; margin accounts and the borrowing against the foregoing.

H. The calling and holding of an annual meeting of its Stockholders, and to amend the ByLaws from time to time, and to allow voting via proxy.

 J. Shall have the power to wind up and dissolve itself, or to be wound up or dissolved by others, with proper authority.

K. Shall have the power to adopt a seal, logo and stamp and to use same at its pleasure.

L.  Shall have the right to borrow money and contract debts when necessary for the transaction of its business, when necessary for the function of the business, or for the exercise of its Corporate powers and rights.  To issue additional stock, bond, promissory

2

notes and other instruments of debts.

M.  Shall have the power to guarantee, hold, sell, assign, transfer, mortgage, pledge or otherwise dispose capital stock, bonds or other instruments of equity or debts as may be necessary to the functions of the Corporation.

N.  Shall have the power to hold, purchase, sell or transfer shares of its own stock and use same as capital, surplus or as other funds.

O.  Shall have the power to have one or more offices in the State of  WYOMING, or any other state or location of its choice.

P.  Shall have the power to appoint Officers and Agents as the affairs of The Corporation may dictate, and set reasonable compensation.

Q.  Shall have the power to open bank, checking, savings and  certificates of deposit accounts in any bank in the State of WYOMING or any other state of choice, such opening and execution of signature cards will be made by Corporate Resolution.

SIXTH:  The total number of common shares of the corporation, at the time of WYOMING   registration,   shall   be   TWENTY   FIVE   THOUSAND   shares   with no Par Value, or any other  number  of shares with a par value  not to exceed $25,000 total capitalization.   Additional shares of stock, of any class, may be issued at any time, upon certified Resolution of the Board of Directors.

Directors shall have the right to split the shares numerically as they may deem appropriate and hold shares within the corporation as "AUTHORIZED BUT UNISSUED", to be issued at later dates of time.  Blank Corporate stock certificates are included in the initial registration  package.

Complete the Corporate certificates by adding the certificate number in the box in upper left corner of the certificate and the number of shares issued in  the  box in the upper right corner. In the blank spaces in the middle of the certificate, add the Stockholder's

3

name and the number of shares. The President of the Corporation must sign in the lower right corner, and must be witnessed in the lower left corner. These steps will complete each certificate.  After the initial issue of certificates, the President shall appoint the Secretary as Transfer Agent who shall maintain records per the terms and conditions of WYOMING 17-21-101-1107.

SEVENTH:  The governing body of the Corporation are the Stockholders who elect the Board of Directors, the number of which may be varied by a vote of the stockholders, but in no case less than one (1) Director.  Their term of office shall be one (1) year, elected by the Stockholders annually, and their salary or compensation set by the Stockholders.

EIGHTH:  The capital stock of the Corporation, after the initial subscription is made, and all monies have been paid in, shall not be subject to any assessment, or to pay any debts of the Corporation.

NINTH:  The Corporation shall have perpetual existence, subject to annual renewals with the WYOMING Secretary of State. The corporation's Registered Agent shall, in a timely manner, notify the President of the corporation of its annual renewal date.

TENTH: By resolution of the Board of Directors, committees may be established, each committee to have one (1) or more Board members, to have a name, and to function within the framework of the corporate By-Laws, and to report any findings directly to the Board Of Directors.

ELEVENTH:  No Shareholder shall be entitled, as a matter of right, to any additional shares of stock, unless authorized by the Board of Directors, and then in  and equitable proportion to their holdings in relation to the holdings of all the other Stockholders.

4

TWELFTH:  No Director or Officer of the Corporation shall be liable to the Corporation, or to the Stockholders, for any breach of fiduciary duties, or acts of omission while acting within the framework of the corporate By-Laws. This protection does not apply to intentional misconduct, fraud or a knowing violation of WYOMING Statutes or of the  United States Codes.

THIRTEENTH:  This Corporation reserves the right to amend, alter, change or repeal any provision contained in its Articles of Incorporation or By-Laws, by a vote of the Stockholders, in the manner as provided by the Statues of the State of  Wyoming.

FOURTEENTH:  The President shall himself, or appoint a Transfer Agent who shall be responsible to maintain a true, complete and accurate record of all Stockholders, their social security numbers, addresses and number of shares and make this record available to all Stockholders at any time upon written request.  The Transfer Agent shall keep the records as per attached STOCK TRANSFER LEDGER SHEET, attached as Schedule A.

FIFTEENTH:  Any Corporation activity beyond the above By-Laws may only be executed with CORPORATE RESOLUTION  properly resolved by an affirmative vote of majority of the Directors, appropriately noticed of the meeting of the Corporation, or  by waiver of notice with the consent of a majority of the Directors, the  motion duly  made and Seconded.  The Corporate Resolution must be in written form, accurately reflecting the location of the meeting, the motion itself, a discussion, the vote, date, then executed by an Officer or Director of the Corporation.

SIXTEENTH: The corporate actions of the Stockholders, Directors and Officers, shall be held harmless from **personal liability** that may result from breach of duty **except for:** A*cts or omissions which involve intentional misconduct, fraud or a knowing violation of law.*

5

SEVENTEENTH:  With the below execution by the President of the before named Wyoming Corporation, he or she,  authorizes himself, or herself, and all other designated Officers of said Corporation, or other appointee(s), to perform and exercise all duties as reflected by these By-Laws, Wyoming Chapter 17-16-101 thru 1810, and any other applicable laws or regulations that may govern the activities of the Corporation.

I, **ROBERT G. WEIDHAAS, JR** President  of the before identified WYOMING Corporation,

formed pursuant to the laws of the State of WYOMING, does herein execute these BY-LAWS, declaring that the facts herein are true, and set my hand the day and date shown below.

**ROBERT G. WEIDHAAS, JR**
**PRESIDENT**

STATE OF _New Jersey_
SS

COUNTY OF _Gloucester_

On this _7th_ day of _September_, 20_11_ did appear before me, a ~~Notary Public~~ Attorney at law of the State of _New Jersey_ the above person, known to me,

or identified to me, who set his/her hand this day of his/her  own free will and accord.

_Terance J. Bennett_                                    TERANCE J. BENNETT
~~NOTARY PUBLIC~~
An attorney of New Jersey

SEAL

# SCHEDULE A

## STOCK TRANSFER LEDGER of
## DIECUT US, INC.

| DATE | NAME | SOCIAL SECURITY NUMBER | NUMBER OF SHARES |
|------|------|------------------------|------------------|
|      |      |                        |                  |
|      |      |                        |                  |
|      |      |                        |                  |
|      |      |                        |                  |
|      |      |                        |                  |
|      |      |                        |                  |
|      |      |                        |                  |
|      |      |                        |                  |
|      |      |                        |                  |
|      |      |                        |                  |
|      |      |                        |                  |
|      |      |                        |                  |

# OVERVIEW & CORPORATE RESOLUTION

THE ATTACHED BY-LAWS WILL BE YOUR BIBLE AS LONG AS YOU OWN YOUR NEW CORPORATION.  IT IS A MIRROR IMAGE OF  WYOMING 17-21-101 THRU 1107 AND AS LONG AS YOU CONDUCT BUSINESS WITHIN THIS FRAME WORK YOU WILL ALWAYS ENJOY THE FULL AND COMPLETE PROTECTION OF THE ALL WYOMIMG STATUES AND WYOMING COURT SYSTEM, OFTEN CALL THE CORPORATE VEIL.

THIS CORPORATE VEIL PROTECTS  ITS DIRECTORS, OFFICERS AND ALL OF ITS STOCKHOLDERS, EQUALLY, FROM PERSONAL LITIGATION.

I HAVE "PERSONALIZED" THE BY-LAWS ONLY TO THE EXTENT OF THE CORPORATE NAME AND PRINCIPAL OFFICERS. I HAVE NOTARIZED YOUR SIGNATURE FOR YOUR CONVENIENCE, AND YOU WILL HAVE A VIABLE OPERATIONAL ENTITY .

AS TIME PASSES YOUR NEEDS AND INTERESTS WILL CHANGE, THUS TO ALTER THE BY-LAWS TO REFLECT THESE CHANGES ------ THIS IS DONE VIA "CORPORATE RESOLUTION".  FOLLOWING IS A FORMAT OF THE CORPORATE RESOLUTION.  DO DRAFT ONE EACH TIME YOU DO SOMETHING BEYOND THE NORMAL BUSINESS SCOPE OF THE CORPORATION, SUCH AS THE PURCHASE OF REAL ESTATE, VEHICLES, MAJOR EQUIPMENT, ADDING NEW STOCKHOLDERS, ACQUIRING LARGE DEBT, ETC. ETC. MAKING THE CHANGES A PERMANENT PART OF YOUR BY-LAWS. DOWNLOAD THIS FORMAT INTO YOUR COMPUTER FOR CONVENIENT CHANGE TO REFLECT YOUR FUTURE RESOLUTIONS.

_____

GENERIC FORMAT FOR INCORPORATED RESOLUTION

(DATE) _____

WITH WAIVER OF NOTICE AND CONSENT.

A MEETING OF THE DIRECTORS OF DIECUT US, INC. WAS HELD IN THE CITY

OF_____  STATE OF_____, THE ABOVE DATE.

A MAJORITY OF THE DIRECTORS WERE PRESENT.

A MOTION WAS MADE AND DULY SECONDED AS FOLLOWS:

 (SPELL OUT THE MOTION, PREFERABLY INTO A "YES OR NO" FORMAT)

A DISCUSSION OF THE MOTION FOLLOWED.

A VOTE WAS TAKEN AND THE MOTION WAS UNANIMOUSLY PASSED (OR REJECTED).

WITH NO MORE BUSINESS TO COME BEFORE THE DIRECTORS, THE MEETING WAS ADJOURNED AT _____(AM OR PM).


_____
ATTEST: CORPORATE SECRETARY

**EXHIBIT B**

## CERTIFICATE OF CORPORATE RESOLUTION

The undersigned, being the President and Director of DIECUT US, INC., a corporation duly organized and existing under the laws of the State of Wyoming (hereinafter "Diecut" or the "Company"), do hereby certify and affirm that on the 23rd day of June, 2023, a duly and regularly called meeting was held, and the following resolutions were duly adopted by the Board of Directors pursuant to the Bylaws of the Company.

RESOLVED, THAT

FIRST, that the attached Bylaws are approved and in effect and supersede all prior Bylaws of the Company.

SECOND, that the Company shall retain the accounting firm of Haefele Flanigan to perform consulting services, approved by the President, to independently review the corporate records for Diecut (including all LLC subsidiaries), financial records and financial statements, and tax filings.

THIRD, that the President is authorized to evaluate strategic alternatives for My Press Needs, LLC, including the potential sale of the assets or alternatively 100% of the LLC. Any potential future transaction with respect to said LLC is subject to approval of the stockholders.

These resolutions aforesaid are presently in due force and effect.

Dated this 23rd day of June, 2023

_____
Robert G. Weidhaas, Jr., President
DIECUT US, INC.

**By-Laws of Diecut US, Inc.**

**(A Wyoming Corporation)**

**ARTICLE I**
**OFFICES**

Section 1.01 **Offices.** The Corporation shall have its registered office in the State of Wyoming, and may have such other offices and places of business within or outside the State of Wyoming as the Board of Directors may from time to time determine or the business of the Corporation may require.

**ARTICLE II**
**STOCKHOLDERS**

Section 2.01 **Place of Meetings.** Meetings of stockholders for any purpose, including Annual and Special Meetings, may be held virtually or at such place or places, either within or outside the State of Wyoming, as shall be designated by the Board of Directors, or by the President with respect to meetings called by the President.

Section 2.02 **Annual Meeting.** The annual meeting of stockholders shall be held on such date as may be determined by the Board of Directors. At such meeting, the stockholders shall elect a Board of Directors and transact such other business as may properly come before the meeting.

Section 2.03 **Special Meetings.** Special meetings of stockholders may be called at any time by the Board of Directors or by the President, and shall be called by the President or Secretary at the written request of stockholders owning a majority of the shares of the Corporation then outstanding and entitled to vote.

Section 2.04 **Notice of Meetings.** Written notice of the annual meeting or any special meeting shall be given to each stockholder entitled to vote thereat, not less than ten nor more than sixty days prior to the meeting, except as otherwise required by statute, and shall state the time and place and, in the case of a special meeting, the purpose or purposes of the meeting. Notice need not be given, however, to any stockholder who submits a signed waiver of notice, before or after the meeting, or who attends the meeting in person or by proxy without objecting to the transaction of business.

Section 2.05 **Quorum.** At all meetings of stockholders, the holders of a majority of the stock issued and outstanding and entitled to vote thereat, present in person or represented by proxy, shall constitute a quorum for the transaction of business, except as otherwise provided by statute, the Certificate of Incorporation or these By-Laws. When a quorum is once present to organize a meeting, it is not broken by the subsequent withdrawal of any stockholder.

Section 2.06 **Voting.** (a) At all meetings of stockholders, each stockholder having the right to vote thereat may vote in person or by proxy, and, unless otherwise provided in the Certificate of Incorporation or in any resolution providing for the issuance of any class or series of stock adopted by the Board of Directors pursuant

to authority vested in the Board by the Certificate of Incorporation, shall have one vote for each share of stock registered in his name. Election of directors shall be by written ballot or voice vote.

(b) When a quorum is once present at any meeting of stockholders, a majority of the votes cast, whether in person or represented by proxy, shall decide any question or proposed action brought before such meeting, unless the question or action is one upon which a different vote is required by express provision of statute, the Certificate of Incorporation or these By-Laws, in which case such provision shall govern the vote on the decision of such question or action.

Section 2.07 **Adjourned Meetings.** Any meeting of stockholders may be adjourned to a designated time and place by a vote of a majority in interest of the stockholders present in person or by proxy and entitled to vote, or by the President if a quorum of stockholders is not present. No notice of such adjourned meeting need be given, other than by announcement at the meeting at which adjournment is taken, and any business may be transacted at the adjourned meeting which might have been transacted at the meeting as originally called. However, if such adjournment is for more than thirty days, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at such meeting.

Section 2.08 **Action by Written Consent of Stockholders.** Any action of the stockholders required or permitted to be taken at any regular or special meeting thereof may be taken without any such meeting, notice of meeting or vote if a consent in writing setting forth the action thereby taken is signed by the holders of outstanding stock having not less than the number of votes that would have been necessary to authorize such action at a meeting at which all shares entitled to vote were present and voted. Prompt notice of the taking of any such action shall be given to any stockholders entitled to vote who have not so consented in writing.

Section 2.09 **Stockholders of Record.** (a) The stockholders from time to time entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to express consent to any corporate action without a meeting, or entitled to receive payment of any dividend or other distribution or the allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, shall be the stockholders of record as of the close of business on a date fixed by the Board of Directors as the record date for any such purpose. Such a record date shall not, with respect to stockholder meetings, be more than sixty days nor less than ten days before the date of such meeting.

(b) If the Board of Directors does not fix a record date, (i) the record date for the determination of stockholders entitled to notice of or to vote at a meeting of stockholders shall be as of the close of business on the day next preceding the day on which notice of such meeting is given, or, if notice is waived as provided herein, on the day next preceding the day on which the meeting is held; (ii) the record date for determining stockholders entitled to express consent to corporate action in writing without a meeting, where no prior action by the Board of Directors is necessary, shall be the close of business on the day on which the first signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation; and (iii) the record date for determining stockholders for any other purpose shall be at the close of business on the day on which the resolution of the Board of Directors relating thereto is adopted.

## ARTICLE III
## DIRECTORS

Section 3.01 **Board of Directors.** The management of the affairs, property and business of the Corporation shall be vested in a Board of Directors, the members of which need not be stockholders. In addition to the power and authority expressly conferred upon it by these By-Laws and the Certificate of Incorporation, the Board of Directors may take any action and do all such lawful acts and things on behalf of the Corporation and as are not by statute or by the Certificate of Incorporation or these By-Laws required to be taken or done by the stockholders.

Section 3.02 **Number.** The number of directors and their terms shall be as fixed from time to time and decided by the Board of Directors.

Section 3.03 **Election and Term of Directors.** At each annual meeting of the stockholders, the stockholders shall elect directors to hold office until the next annual meeting. Each director shall hold office until the expiration of such term and until his successor, if any, has been elected and qualified, or until his earlier resignation or removal.

Section 3.04 **Annual and Regular Meetings.** The annual meeting of the Board of Directors shall be held promptly after the annual meeting of stockholders, and regular meetings of the Board of Directors may be held at such times as the Board of Directors may from time to time determine. No notice shall be required for the annual or any regular meeting of the Board of Directors.

Section 3.05 **Special Meetings.** Special meetings of the Board of Directors may be called by the President, or by any two directors, within three business day's notice to each director either personally or by mail, email, telephone, telecopier or telegraph, and if by email, telephone, telecopier or telegraph confirmed in writing before or after the meeting, setting forth the time and place of such meeting. Notice of any special meeting need not be given, however, to any director who submits a signed waiver of notice, before or after the meeting, or who attends the meeting without objecting to the transaction of business.

Section 3.06 **Place of Meetings.** (a) The Board of Directors may hold its meetings, regular or special, by virtual or teleconference means, or at such places, either within or outside the State of Wyoming, as it may from time to time determine or as shall be set forth in any notice of such meeting.

(b) Any meeting of the Board of Directors may be held by means of videoconference or conference telephone or similar communications equipment whereby all persons participating in the meeting can hear each other, and such participation shall constitute presence at the meeting.

Section 3.07 **Adjourned Meetings.** A majority of the directors present, whether or not a quorum, may adjourn any meeting of the Board of Directors to another time and place. Notice of such adjourned meeting need not be given if the time and place thereof are announced at the meeting at which the adjournment is taken.

Section 3.08 **Quorum of Directors.** A majority of the total number of directors shall constitute a quorum for the transaction of business. The total number of directors means the number of directors the Corporation would have if there were no vacancies.

Section 3.09 **Action of the Board of Directors.** The vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors, unless the question or action is one upon which a different vote is required by express provision of statute, the Certificate of Incorporation or these By-Laws, in which case such provision shall govern the vote on the decision of such question or action. Each director present shall have one vote.

Section 3.10 **Action by Written Consent of Directors.** Any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if a written consent thereto is signed by all members of the Board of Directors or of such committee, and such written consent is filed with the minutes of proceedings of the Board of Directors or committee.

Section 3.11 **Resignation.** A director may resign at any time by giving written notice to the Board of Directors, the President or the Secretary of the Corporation. Unless otherwise specified in the notice, the resignation shall take effect upon receipt by the Board of Directors or such officer, and acceptance of the resignation shall not be necessary.

Section 3.12 **Removal of Directors.** Any or all of the directors may be removed with or without cause by the majority vote of the stockholders.

Section 3.13 **Newly Created Directorships and Vacancies.** Newly created directorships resulting from an increase in the number of directors or vacancies occurring in the Board of Directors may be filled by a vote of the majority of the directors then in office, although less than a quorum. A director elected to fill a newly created directorship or to fill any vacancy shall hold office until the next annual meeting of stockholders, and until his successor, if any, has been elected and qualified.

Section 3.14 **Chairman.** At all meetings of the Board of Directors the Chairman of the Board or, if one has not been elected or appointed or in his absence, a chairman chosen by the directors present at such meeting, shall preside.

Section 3.15 **Committees Appointed by the Board of Directors.** The Board of Directors may, by resolution passed by a majority of the entire Board of Directors or by written consent of all of the directors, designate one or more committees, each committee to consist of one or more of the directors. Any such committee, to the extent provided in the resolution, except as restricted by law, shall have and may exercise the powers of the Board of Directors in the management of the affairs, business and property of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it.

Section 3.16 **Compensation.** No compensation shall be paid to directors, as such, for their services. Nothing herein contained shall be construed to preclude any director from serving the corporation in any other capacity and receiving compensation therefore.

## ARTICLE IV
## OFFICERS

Section 4.01 **Offices, Election and Term.** (a) At its annual meeting the Board of Directors shall elect or appoint a President, Treasurer and a Secretary and may, in addition, elect or appoint at any time such other officers as it may determine. Any number of offices may be held by the same person.

(b) Unless otherwise specified by the Board of Directors, each officer shall be elected or appointed to hold office until the annual meeting of the Board of Directors next following his election or appointment and until his successor, if any, has been elected or appointed and qualified, or until his earlier resignation or removal.

(c) Any officer may resign at any time by giving written notice to the Board of Directors, the President or the Secretary of the Corporation. Unless otherwise specified in the notice, the resignation shall take effect upon receipt thereof, and the acceptance of the resignation shall not be necessary to make it effective.

(d) Any officer elected or appointed by the Board of Directors may be removed by the Board of Directors with or without cause. Any vacancy occurring in any office by reason of death, resignation, removal or otherwise may be filled by the Board of Directors.

Section 4.02 **Powers and Duties.** The officers, agents and employees of the corporation shall each have such powers and perform such duties in the management of the affairs, property and business of the Corporation, subject to the control of and limitation by the Board of Directors, as generally pertain to their respective offices, as well as such powers and duties as may be authorized from time to time by the Board of Directors.

## ARTICLE V
## CERTIFICATES AND TRANSFER OF SHARES

Section 5.01 **Certificates.** Unless otherwise provided pursuant to the General Corporation Law of the State of Wyoming, the shares of stock of the Corporation shall be represented by certificates, as provided by the General Corporation Law of the State of Wyoming. They shall be numbered and entered in the books of the Corporation as they are issued.

Section 5.02 **Lost or Destroyed Certificates.** The Board of Directors may in its discretion authorize the issuance of a new certificate or certificates in place of any certificate or certificates theretofore issued by the Corporation, alleged to have been lost, stolen or destroyed. As a condition of such issuance, the Board of Directors may require, either generally or in each case, the record holder of such certificates, or his legal representative, to furnish an affidavit setting forth the facts of such alleged loss, theft or destruction, together with proof of advertisement of the alleged loss, theft or destruction, and a bond with such surety and in such form and amount as the Board may specify indemnifying the Corporation, any transfer agent and registrar against any claim against any of them relating to such lost, stolen or destroyed certificates.

Section 5.03 **Transfer of Shares.** (a) Upon surrender to the Corporation or the transfer agent of the Corporation of a certificate for shares or other securities of the Corporation duly endorsed or accompanied by proper evidence of succession, assignment or authority to transfer, the corporation shall issue a new certificate to the person entitled thereto, and cancel the old certificate, except to the extent the Corporation

or such transfer agent may be prevented from so doing by law, by the order or process of any court of competent jurisdiction, or under any valid restriction on transfer imposed by the Certificate of Incorporation, these By-Laws, or agreement of security holders. Every such transfer shall be entered on the transfer books of the Corporation.

(b) The Corporation shall be entitled to treat the holder of record of any share or other security of the Corporation as the holder in fact thereof and shall not be bound to recognize any equitable or other claim to or interest in such share or security on the part of any other person whether or not it shall have express or other notice thereof, except as expressly provided by law.

## ARTICLE VI
## INDEMNIFICATION

Section 6.01 **Indemnification.** The Corporation shall indemnify the directors, officers, agents and employees of the Corporation only as provided by law in the General Corporation Law of the State of Wyoming. The directors, officers, employees and agents of the Corporation shall be fully protected individually in making or refusing to make any payment or in taking or refusing to take any other action under this Article VI in reliance upon the advice of counsel.

## ARTICLE VII
## MISCELLANEOUS

Section 7.01 **Corporate Seal.** The seal of the Corporation shall be circular in form and bear the name of the Corporation, the year of its organization and the words, "Corporate Seal, Wyoming".

Section 7.02 **Execution of Instruments.** All corporate instruments and documents shall be signed or countersigned, executed, and, if desired, verified or acknowledged by a proper officer or officers or such other person or persons as the Board of Directors may from time to time designate.

Section 7.03 **Fiscal Year.** The fiscal year of the Corporation shall be as determined by the Board of Directors.

## ARTICLE VIII
## AMENDMENTS

Section 8.01 **Amendments.** These By-Laws may be altered, amended or repealed from time to time by the stockholders or by the Board of Directors without the assent or vote of the stockholders.

# EXHIBIT C

# Ferrara Law Group, P.C.



December 7, 2023

**VIA OVERNIGHT MAIL and EMAIL (robw@mypressneeds.com)**
Robert G. Weidhaas, Jr.
1215 Evergreen Road
Yardley, PA. 19067

      **RE:    DIECUT US, INC.**

Dear Mr. Weidhaas:

      Please be advised that I represent John C. Stadler with regard to his interest in Diecut US, Inc. (the "Company"). Without waiver of Mr. Stadler's rights to contest the law governing the relationship between you and him, this correspondence is issued to you, not the Company, and not the Company's purported attorney, James C. Cashel, Esq., in aid of Mr. Stadler's desire to resolve the differences between you and him without resort to costly litigation. The facts of the dispute are as follows.

      On or about June 23, 2023, you, acting in your capacity as president of the Company, purport to have certified a corporate resolution amending the by-laws of the Company dated September 7, 2011 (the "Bylaws"). At Article Thirteen, the Bylaws state that the Company "reserves the right to amend, alter, change or repeal any provision contained in its Articles of Incorporation or By-Laws, by a vote of the Stockholders, in the manner as provided by the Statutes of the State of Wyoming." This mechanism is expressly authorized by Wyo. Stat. Ann. § 17-16-1020. No notice of any shareholder meeting related to amending the Bylaws was served pursuant to Wyo. Stat. Ann. §§ 17-16-14(c) or §17-16-705. No shareholder meeting pursuant to Wyo. Stat. Ann. § 17-16-702 took place relative to amending the Bylaws. Accordingly, ignoring for the moment that the June 23, 2023 resolution fails to meet the

requirements of Article Fifteen of the Bylaws, the amendment to the Bylaws it purports to approve are a nullity.

All corporate actions which purport to be taken pursuant to any amendment of the Bylaws, including, but not limited to, the actions by "consent" dated November 27, 2023 and November 28, 2023 and the appointment of Mr. Cashel are also nullities.

Setting aside the impropriety of Mr. Cashel's claim to represent the Company, with regard to Mr. Cashel's correspondence dated November 20, 2023 demanding payment of $86,889.71, Mr. Stadler acknowledges receipt of $68,242.96 which constituted an equalization of compensatory disbursement to Mr. Stadler. Periodic equalization of compensatory disbursement has long been the custom of Mr. Stadler and you. Moreover, you were aware of the payment prior to it being made and raised no objection, nor could you have. As such, to the extent that Mr. Stadler is aware of the demand, even if it was expressed by a person unauthorized to act on behalf of the Company, Mr. Stadler rejects the demand for return of $68,242.96. Mr. Stadler also rejects any demand for repayment of $18,646.75 for the Company's purported "independent examination of the Company's financial statements, accounts, and accounting and payment activity" which was necessitated not by Mr. Stadler's actions, but rather by your actions excluding Mr. Stadler from operation of the Company.  To the extent that any unauthorized action is brought by the Company against Mr. Stadler alleging that he made an authorized dividend distribution, he could only have done so in his capacity as a director of the Company and, according, he will demand indemnification from the Company pursuant to Wyo. Stat. Ann. § 17-16-852.

Ultimately, the reasons for your unlawful actions relative to the Company freezing Mr. Stadler out from its operation are unclear but for the purpose of this correspondence, the reasons are unimportant. Mr. Stadler agrees that a continued relationship between you and him is untenable. There are two options for moving forward, both of which accomplish your goal of sole operation of the Company. The first is to obtain a business valuation from a mutually acceptable third party and for you to pay Mr. Stadler the corresponding value for his 20% interest in the company. This route has the advantage of being both cost-efficient and

1 Holtec Drive, Suite G102, Marlton, New Jersey 08053

PHONE
(609) 571-3738

FAX
(609) 498-7440

WEB
ferraralawgp.com

expeditious. The alternative is to proceed to litigation which is sure to be both costly and drawn-out. The choice is yours.

I ask for your response by December 15, 2023. Please do not attempt to contact Mr. Stadler directly or through counsel. You can reach me by phone at 609.571.3745 or by email at Noah@ferraralawgp.com to discuss. If I do not hear from you by then I will assume that you have chosen to litigate this matter which would be both unfortunate and entirely avoidable.

Thank you,

**FERRARA LAW GROUP, P.C.**

NOAH A. SCHWARTZ

NAS/nas